**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO PUBLIC REGULATION
COMMISSION,

Plaintiff,

v.                                                                                                  Civ. No. 08-607 WJ/RHS

VONAGE HOLDINGS CORP., et al.,

Defendants.

**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]**

This matter comes before the Court on a Motion to Dismiss filed by the Defendants on July 21, 2008. (Document 7) Plaintiff filed a response in opposition to the motion, and Defendants filed a reply. The matter was referred to the undersigned for a recommended disposition. The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds the Motion should be granted. The Court makes the following findings and recommended disposition.

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

**STATEMENT OF PROCEEDINGS**

Plaintiff New Mexico Public Regulation Commission (hereinafter PRC) filed this declaratory judgment action to determine whether or not the PRC, as a state regulatory agency, could impose traditional telephone company regulations on Defendants Vonage Holdings Corp, Vonage America, Inc., and Vonage Network Inc. (hereinafter Vonage). Specifically, the PRC wants to subject Vonage to its universal service fund surcharges for Vonage's voice over Internet telephone services which occur within the state of New Mexico. Vonage has refused to pay the surcharges arguing that the state's authority to levy the surcharges under its universal service fund has been preempted by the FCC. The briefing by the parties sets out in more detail the technical aspects of voice over Internet and the issues involved, which will not be repeated here.

**DISCUSSION**

Two prior federal lawsuits filed in Minnesota and Nebraska and a FCC Order have addressed this exact issue. Both federal courts determined that federal preemption precludes state regulation to impose surcharges. Vonage argued in those cases that their voice over Internet service was an "information service" and thus regulation was preempted by federal law. Vonage also argued that regardless of whether voice over Internet was classified as a an "information service" or a "telecommunication service" it would be impossible or impractical to separate the service into distinct interstate and intrastate portions, thus federal jurisdiction would be exclusive.

The District Court in *Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n*, 290 F. Supp.2d 993 (D. Minn. 2003), *aff'd,* 394 F.3d 568 (8th Cir. 2004), determined that Vonage's voice over Internet was an "information service" and held that the Minnesota agency could not exercise jurisdiction over Vonage in this area. After the District Court decision, but before the appeal was decided, the FCC issued its *Vonage Preemption Order,* 19 FCC Rcd at 22404 (2004). In that order

the FCC failed to reach the classification question of information service versus telecommunications service.  However, the FCC did determine that the characteristics of voice over Internet preclude practical identification and separation of the voice communications into interstate and intrastate components for purposes of effectuating a dual federal and state regulatory scheme.  Thus, the FCC determined that permitting the Minnesota regulations would thwart federal law and policy.  The FCC also noted in rather broad terms Congress's clear preference for an unregulated Internet and stated that this preference provided additional support for preemption in this area.  After the FCC decision the 8th Circuit reviewed both the District Court injunction, as cited above, and the FCC *Vonage Preemption Order, See Minn. Pub. Utils. Comm'n*, 483 F. 3d 583 (8th Cir. 2004).  It affirmed both.

The Nebraska case was filed by Vonage in December 2007.  The District Court ruled in Vonage's favor, citing the above 8th Circuit precedent.  *Vonage Holdings Corp and Vonage Network Inc. v. Neb. Pub. Serv. Comm'n, 543 F. Supp 2d 1062* (D. Neb. 2008).  That case is currently on appeal to the 8th Circuit.

The PRC  argues that its complaint alleges facts which preclude a motion to dismiss. Specifically, the PRC alleges that technological developments since 2004 have made it practical at this point to distinguish between intrastate and interstate voice over Internet traffic.  Vonage responds that, in addition to  the FCC's conclusion that there was no plausible approach to separating the intrastate from the interstate traffic, the FCC was making a policy determination that Vonage has no service driven reason to know users' locations, thus to require them to incorporate end point identification capabilities into its service just to facilitate state regulation would serve no legitimate policy purpose.  In addition, Vonage argues that even if the factual allegations in the PRC's complaint had altered the policy foundations of the FCC's *Vonage Preemption Order*, they

3

would still not be relevant to this case as the *Vonage Preemption Order* is not before this Court, citing *Vonage Holding Corp. v. Minn. Pub. Utils. Comm'n.*, supra.  The 8th Circuit noted in the *Vonage Holding Corp.* case that the Administrative Orders Review Act (Hobbs Act) 28 U.S.C. §§ 2342 and 2344, precludes collateral attacks on FCC orders.  That principle was cited approvingly in a footnote in *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1273 n.8 (10th Cir. 2007).

In this Court's opinion the main issue is whether this Court is the proper forum for litigating the technical factual issues surrounding whether intrastate traffic can be separated from interstate traffic as alleged in the PRC's complaint and whether, even if such traffic could be separated, such a finding would negate the broad preemption determination found in the *Vonage Preemption Order*.  This Court thinks it is not.  The FCC's order was not narrow.  A return to the FCC for a review of that order or a direct court challenge to the FCC relative to its order would be the proper method to address the issue.  In this technologically complicated area, control over which has been vested by Congress in the FCC, it would seem inappropriate to allow separate lawsuits in every state against telecommunication companies by state regulatory agencies attempting to overturn or avoid the effect of prior orders of the FCC.  Even if the PRC is correct that the traffic can be separated and even if it is correct that this technological fact would destroy the foundation for the FCC policy, the proper approach is to have the FCC reevaluate the issue or make the FCC a party and litigate the current validity of their order.  The Court is persuaded that the decisions of the federal courts in Minnesota and Nebraska are correctly decided.

Plaintiff's do cite and provide to the Court, without much fanfare, but for the Court's information, a copy of the FCC's amicus brief in the appeal to the 8th Circuit of the Nebraska case.  The FCC's amicus brief supports the Nebraska Public Service Commission and contradicts the FCC's own *Vonage Preemption Order*.  While this Court does not pretend to understand the motives

4

of the agency in filing an amicus brief which appears to go against its previous order, the filing of a brief in a separate lawsuit does not change the legal effect of the *Vonage Preemption Order* and is not persuasive.

## RECOMMENDED DISPOSITION

The Court recommends that Defendants' Motion to Dismiss be GRANTED.

_____
**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**