**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

NEW MEXICO PUBLIC REGULATION
COMMISSION,

       Plaintiff,

      vs.                                                                                 No. 08-CV-607 WJ/WDS

VONAGE HOLDINGS CORP., VONAGE
AMERICA, INC., and VONAGE NETWORK INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER LIFTING STAY, OVERRULING
PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S RECOMMENDED
FINDINGS AND PROPOSED DISMISSAL OF CASE
and
ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION OF DISMISSAL
BASED ON FEDERAL PREEMPTION**

THIS MATTER comes before the Court following oral argument on Plaintiff's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 30), and following a stay of all proceedings in this case. Having considered the parties' oral arguments and pleadings on this matter as well as the applicable law, the Court finds that Plaintiff's objections are not meritorious and thus, they are overruled. Further, the Court adopts the Magistrate Judge's recommendation of dismissal based on the doctrine of federal preemption.

**PROCEDURAL BACKGROUND**

Vonage Holdings Corp., Vonage America, Inc., and Vonage Network, Inc., ("Vonage" or "Defendants") provide voice over the internet, or "VoIP" telecommunications services – a relatively new technology. VoIP is an internet application used to transmit voice communication

over a broadband internet connection, rather than transmission over traditional landlines.  VoIP service allows customers to originate and receive calls on their telephones, as well as on their computers.

In this lawsuit, Plaintiff New Mexico Public Regulatory Commission ("New Mexico PRC" or "Plaintiff") seeks a declaratory judgment requiring Vonage to pay certain services fees into the New Mexico Universal Services Fund, a fund created by the New Mexico Legislature for the purpose of ensuring affordable and comparable rural telecommunications services. This case presents the issue of whether the New Mexico PRC can require telecommunication providers like Vonage to pay a state surcharge or state universal service fee.

On July 21, 2008, Vonage filed a Motion to Dismiss (Doc. 7), which was referred to United States Magistrate Judge W. Daniel Schneider for recommendation of an ultimate disposition.  See Doc. 18.  Judge Schneider recommended that Defendants' Motion to Dismiss be granted. See Doc. 29.  Plaintiff filed objections to the recommended findings (Doc. 35), and this Court held a hearing on the matter on January 28, 2009 (Doc. 35).

After hearing extensive arguments during the proceedings, the Court deferred ruling on Plaintiff's objections and the underlying motion to dismiss and stayed the case pending resolution of a case from the United States District Court for the District of Nebraska that involved nearly identical issues and was on appeal to the Eighth Circuit. See Vonage Holdings Corp. and Vonage Network Inc. v. Neb. Pub. Serv. Comm'n, 543 F.Supp.2d 1062 (D. Neb. 2008). The Eighth Circuit recently issued its opinion in that case. See Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n, 564 F.3d 900 (8th Cir. 2009). The Court hereby lifts the stay previously imposed in this case and shall proceed to address those matters on which ruling was held in abeyance.

## GENERAL BACKGROUND

### I.     VoIP Technology

Certain aspects of VoIP technology need to be understood in order to address adequately the legal issues in this case. The Eighth Circuit has set forth in very understandable wording the complexities surrounding VoIP technology:

> VoIP is an internet application used to transmit voice communication over a broadband internet connection. With traditional circuit-switched telephone communications, the end-to-end geographic locations of landline-to-landline telephone communications are known, and the interstate or intrastate nature of the calls is readily determinable. VoIP-to-VoIP communications originate and terminate at IP addresses and are tied to no identifiable geographic location. In VoIP-to-landline or landline-to-VoIP communications, known as "interconnected VoIP service," the geographic location of the landline part of the call can be determined, but the geographic location of the VoIP part of the call can be anywhere the VoIP customer obtains broadband access to the Internet. Thus, the interstate or intrastate nature of VoIP-to-VoIP and interconnected VoIP service cannot be determined by reference to the customer's billing address. Similarly, determining the interstate or intrastate nature of VoIP service cannot be accomplished by reference to the VoIP user's telephone number, because a customer living in one area code may be assigned a telephone number from a different area code . . . .
>
> Finally, interconnected VoIP service may be "nomadic" or "fixed." Nomadic service allows a customer to use the service by connecting to the Internet wherever a broadband connection is available, making the geographic originating point difficult or impossible to determine. Fixed VoIP service, however, originates from a fixed geographic location. For example, cable television companies offer interconnected VoIP service, and the transmissions use the cable running to and from the customer's residence. As a result, the geographic originating point of the communications can be determined and the interstate and intrastate portions of the service are more easily distinguished. This case involves nomadic interconnected VoIP services. The specific issue in the current litigation is whether nomadic interconnected VoIP service providers may be subjected to a state regulation requiring them to collect a universal service fund surcharge . . . .

Neb. Pub. Serv. Comm'n, 564 F.3d at 902-903.

### II.    New Mexico Public Regulation Commission and the Universal Fund

In 2006, the New Mexico PRC passed an order requiring interconnected VoIP providers to pay "universal fees," which are surcharges on intrastate communications, into the New

3

Mexico "universal fund." The universal fund is intended to ensure universal telecommunications service in the state and to reduce "switched access charge levels." Also in 2006, the FCC entered its own order universal fees order ("USF Contribution Order"), requiring VoIP providers like Vonage to contribute to a *federal* universal service fund.

In recognition of the difficulty associated with identifying inter- and intra- state telecommunication traffic, the FCC adopted a "safe harbor" method of establishing revenue for the federal universal fund, based on a 64.9% ratio. The "safe harbor" provision establishes 64.9% as the percentage of a customer's interconnected VoIP communications presumed to be interstate, and to which the federal universal service fund surcharge applies. Neb. Pub. Serv. Comm'n, 564 F.3d at 903. The safe harbor "ensures that VoIP providers will not have to make universal service fund contributions on more than a certain percentage of their revenues." Vonage Holdings Corp. v. FCC, 489 F.3d 1232, 1236-37 (D.C. Cir. 2007). The percentage is only a ceiling for what a VoIP provider is required to contribute. VoIP providers may reduce their universal service fund contributions "if, through traffic studies, they can show that their actual percentage of interstate and international revenues falls below the safe harbor percentage." Id. The "safe harbor" percentage thus allows VoIP service providers to determine how much they must contribute to the universal service fund without having to determine exactly how much of their revenue comes from interstate communications.

### III.     Legal Standards

The Court begins its discussion with the legal issues and standards relevant to this case, and then moves to an overview of the relevant legal decisions. Subsequent discussion addresses the Magistrate Judge's recommendations and the Plaintiff's objections to those recommendations in light of the Eight Circuit's recent decision in the Nebraska case.

A.      Standard of Review

The Court is required to make a *de novo* determination on those portions of Magistrate Judge Schneider's findings or recommendations which are properly objected to. Fed. R. Civ. P. 72(b)(3). There are no relevant factual disputes or conflicting allegations, thus the issue before the Court here, whether federal communications law preempts the New Mexico PRC from imposing common carrier telecommunications regulations on Vonage for its VoIP service, is a purely legal question.

B.      Legal Standards Regarding Regulation of Telephone Service Providers

The Federal Communications Act of 1934, 47 U.S.C. § 151 et seq., and the Telecommunications Act of 1996, 47 U.S.C. § 251 et seq., set out a dual system of state and federal regulation over telephone service. In adopting the Telecommunications Act, Congress expressly authorized the states to participate in "universal service" by adopting regulations "not inconsistent with the [FCC's] rules to preserve and advance universal service." 47 U.S.C. § 254(c). See also § 254(b) ("There should be specific, predictable and sufficient Federal and State mechanisms to preserve and advance universal service").

C.      Law on Preemption

Federal law preempts state or local law in three situations: (1) express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law; (2) field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a state to supplement it; and (3) conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Southwestern

Bell Wireless, Inc. v. Johnson County Bd. of County Comm'rs, 199 F.3d 1185, 1190 (10th Cir. 1999). Courts interpret the preemption doctrine with a presumption against preemption. See, e.g., Cipollone v. Liggett Group, Inc., 505 U.S. 504, 518 (1992) ("[W]e must construe these provisions in light of the presumption against the preemption of state police power regulations.").

**IV.     Relevant Case Law**

The issue before this Court also came before the federal district court in Minnesota in 2003, when the Minnesota Public Utilities Commission ordered Vonage to comply with Minnesota statutes and rules regarding the offering of telephone service just as if Vonage were offering traditional wireline local exchange service within the state. In response, Vonage filed a complaint for injunctive relief with the United States District Court for the District of Minnesota, as well as a petition with the FCC requesting a declaratory ruling preempting an order of the Minnesota Public Utilities Commission ("Minnesota PUC") imposing regulations applicable to providers of VoIP telephone service. See Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n, 290 F.Supp.2d 993 (D. Minn. 2003), *aff'd*, 394 F.3d 568 (8th Cir. 2004); In re Vonage Holdings Corp. Petition for Declaratory Ruling Concerning an Order of the Minn. Pub. Util. Comm'n, 19 F.C.C. Rcd. 22,404, ¶ 1 (Nov. 12, 2004) ("Vonage Preemption Order"). In both forums, Vonage sought a declaration that VoIP was an "information service" and was therefore exempt from traditional phone company regulation under both federal and state law. See 290 F.Supp.2d at 997; Vonage Preemption Order, 19 F.C.C. Rcd. at 22,410, ¶ 12. In its petition to the FCC, Vonage also argued that, regardless of the regulatory classification of VoIP, it would be impossible to separate the service into distinct interstate and intrastate portions, and that federal jurisdiction was therefore exclusive. See Vonage Preemption Order, 19 F.C.C. Rcd. at 22,408-

22,410, ¶¶ 10-12.[1]

After reviewing the characteristics of Vonage's VoIP service in light of federal telecommunications law, the Minnesota federal court ruled that Vonage was an "information service" and granted the requested injunction against the Minnesota PUC. See 290 F.Supp.2d at 999. The district court's decision was appealed to the Eighth Circuit. See Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n, 394 F.3d 568, 569 (8th Cir. 2004). In November of 2004, while that appeal was pending, the FCC issued its Order responding to Vonage's petition for a declaratory ruling preempting the Minnesota PUC's order. The Commission sided with Vonage, stating that federal regulations preempted state regulations of telecommunication services which utilize VoIP. See Vonage Preemption Order, 19 F.C.C. Rcd. at 22,404, ¶ 1. The FCC determined that it would be impractical, if not impossible, to separate the intrastate portions of VoIP service from the interstate portions without creating a conflict with federal rules and policies. See id. Then in December of 2004, the Eighth Circuit handed down its decision in the appeal from the District of Minnesota case. The Circuit Court concluded that it was bound by the FCC's Vonage Preemption Order and upheld the injunction. See Minn. Pub. Utils. Comm'n, 394 F.3d at 569.

Subsequently, "several petitions seeking direct review of the [FCC's] order were filed in various courts of appeals - one in the Second Circuit, one in the Sixth Circuit, and two in the Eighth Circuit. After brief transfers to the Ninth Circuit, all four petitions ultimately found their way to the Eighth Circuit and were consolidated into . . . one case." Minn. Pub. Utils. Comm'n v. FCC, 483 F.3d 570, 577 (8th Cir. 2007). In that case, the Eighth Circuit concluded that the issue

---

[1] While the Vonage Preemption Order preempted state regulation of telecommunication services which utilize VoIP, it did not go so far as to determine whether to classify Vonage as an information service or a telecommunications service.

was not ripe for review, but otherwise affirmed the FCC's order and denied the Minnesota PUC petitions for review. Id. at 574. The court concluded that "the FCC did not arbitrarily or capriciously determine state regulation of VoIP service would interfere with valid federal rules or policies." Id. at 581. The court explained:

> The end-to-end geographic locations of traditional landline-to-landline telephone communications are readily known, so it is easy to determine whether a particular phone call is intrastate or interstate in nature. Conversely, VoIP-to-VoIP communications originate and terminate at IP addresses which exist in cyberspace, but are tied to no identifiable geographic location. . . . Similarly, in VoIP-to-landline or landline-to-VoIP communications, known as "interconnected VoIP service," the geographic location of the landline part of the call can be determined, but *the geographic location of the VoIP part of the call could be anywhere in the universe* the VoIP customer obtains broadband access to the Internet, not necessarily confined to the geographic location associated with the customer's billing address or assigned telephone number.

Id. at 574-75 (internal citations omitted) (emphasis added).

Vonage recently filed suit against the Nebraska Public Service Commission ("Nebraska PSC"), seeking an injunction prohibiting the Nebraska PSC from imposing state universal service charges on Vonage's service. See Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n, 543 F.Supp.2d 1062 (D. Neb. 2008). The district court granted the injunction, concluding that the Nebraska PSC's "authority to regulate the nomadic interconnected VoIP service provided by [Vonage] is preempted by the FCC, and Vonage need not comply with the Nebraska Universal Service Fund Order." Id. at 1068. The Nebraska PSC appealed the adverse ruling to the Eighth Circuit, and this appeal was pending when the Court heard oral argument in the instant case. On May 1, 2009, the Eighth Circuit unanimously affirmed the Nebraska district court's ruling and upheld the injunction against the Nebraska PSC. See generally Neb. Pub. Serv. Comm'n, 564 F.3d 900. As further described below, I find the reasoning employed by the Eighth Circuit in that case and in previous cases in which it has addressed similar issues to be cogent, persuasive, and

applicable to the issues raised in Vonage's motion to dismiss.

## V.      Magistrate Judge's Proposed Findings and Recommendation

In its underlying motion to dismiss, Vonage contends that the New Mexico PRC is not authorized to make Vonage contribute to the New Mexico Universal Service Fund, based on the Vonage Preemption Order and supportive case law.  The New Mexico PRC responds by arguing, on several different grounds, that federal preemption does not apply. The Court will list and address each one of these grounds below. Magistrate Judge Schneider recommended dismissal of the case based on federal preemption, relying primarily on the FCC Vonage Preemption Order.

### DISCUSSION

Plaintiff's main arguments, including those arguments encapsulated in its objections to the Magistrate Judge's recommended findings, can be summed up in the following categories:[2] (1) that the Vonage Preemption Order is obsolete and inapposite because new technology makes it possible to distinguish between intraststate and interstate VoIP traffic; (2) that the Vonage Preemption Order is read too broadly; and (3) that federal preemption doctrine does not apply to the instant case.  The New Mexico PRC raises other arguments which the Court considers to be collateral to the central preemption question, but which the Court will take up after addressing the main arguments.

## I.      Applicability of Vonage Preemption Order

The New Mexico PRC contends that the Vonage Preemption Order is obsolete and inapplicable because new technology makes it possible to distinguish between intraststate and

---

[2] Plaintiff contends that the Magistrate Judge did not address all of the arguments raised in its response to Defendants' motion to dismiss.  For this reason, the Court includes in this discussion Plaintiff's objections to the Magistrate Judge's recommended findings as well other arguments raised by Plaintiff in its response.

interstate VoIP traffic.

The difficulty in ascertaining the nature of VoIP traffic is referred to as the "impossibility" argument. Under 47 U.S.C. § 152(b)'s "impossibility exception," the FCC may preempt all state regulation of services which would otherwise be subject to dual control if it is impossible or impractical to separate the service's interstate and intrastate components, and the state regulation interferes with valid federal rules or policies. See Neb. Pub. Serv. Comm'n, 564 F.3d at 904. Plaintiff argues that technological developments since 2004 have made it practical to distinguish between intrastate and interstate voice over Internet traffic. However, the Magistrate Judge rejected this argument, noting that the nature of digital voice communications makes it difficult, if not impossible, to determine the exact geographic points of origination and termination of the calls. See Doc. 29 at 3. The Magistrate Judge further determined that whether the Vonage Preemption Order was wrong or is obsolete is not properly decided in this forum, and that "[a] return to the FCC for a review of that order or a direct court challenge to the FCC relative to its order would be the proper method to address the issue [of whether technology has advanced sufficiently to render the Vonage Preemption Order obsolete." Id. at 4.

In an earlier decision interpreting the Vonage Preemption Order, the Eighth Circuit held that the impossibility exception was "dispositive of . . . whether the FCC has authority to preempt state regulation of VoIP services." Minn. Pub. Utils. Comm'n, 483 F.3d at 578. In its most recent decision on the issue the Eighth Circuit affirmed that holding, concluding that "[b]ecause Vonage's nomadic interconnected VoIP service cannot be separated into interstate and intrastate usage, the impossibility exception is determinative." Neb. Pub. Serv. Comm'n, 564 F.3d at 905.

I agree with the Eighth Circuit's findings and with the Magistrate Judge's findings on

this issue. Federal preemption occurs when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Southwestern Bell Wireless, Inc., 199 F.3d at 1190. This Court holds, as the Eighth Circuit held, that the "impossibility exception" is dispositive of this issue.

## II.     Interpretation of Vonage Preemption Order

Plaintiff argues that the express language of the Vonage Preemption Order indicates that it should not be read broadly to preempt regulations addressing the New Mexico universal service fund, and that other courts' decisions support this limited reading of the Order. Plaintiff urges a reading of the Preemption Order that is limited to state entry regulations and tariff requirements and does not include state universal service fees. I find that the recent Eighth Circuit decision undercuts all of Plaintiff's arguments in this category, since that court's findings on the "impossibility" argument apply equally to universal service fees. Plaintiff relies on a Tenth Circuit case, WWC Holding Co. v. Sopkin, 488 F.3d 1262 (10th Cir. 2007), which is not helpful because it mentions the Vonage Preemption Order in passing and only then to distinguish it as inapplicable. Similarly, Plaintiff refers to other cases which are inapposite to the instant situation and do not stand for the propositions suggested by the Plaintiff.[3]

## III.    Application of Preemption Principles

Plaintiff argues that preemption principles do not apply here because the Vonage Preemption Order does not preempt states' rights to impose universal surcharges. Once again,

---

[3]     See Comcast IP Phone of Mo. v. Mo. Pub. Serv. Comm'n, No. 06-4233-CV, 2007 WL 172359, at *3-5 (W.D. Mo. Jan. 18, 2007); Baltimore v. Vonage, 544 F.Supp.2d 458 (D. Md. 2008).

the Court finds that the Eighth Circuit's analysis based on the "impossibility" argument governs. As stated earlier, the FCC may preempt all state regulation of services which would otherwise be subject to dual control if it is impossible or impractical to separate the service's interstate and intrastate components, and the state regulation interferes with valid federal rules or policies. 47 U.S.C. § 152(b). The Eighth Circuit affirmed the lower court's interpretation of the Vonage Preemption Order and its conclusion that Vonage's nomadic VoIP service cannot be separated into interstate and intrastate usage. Neb. Pub. Serv. Comm'n, 564 F.3d at 904. I agree with the Eighth Circuit and find that federal preemption applies in this case.

## IV.     Other Non-Preemption Arguments

Plaintiff raises other arguments which are not central to the preemption question and which can be summarily addressed and dismissed. For example, Plaintiff argues that the FCC's imposition of a universal service fund contribution order somehow authorizes the imposition of *state* universal service requirements. This argument has no merit. While the FCC's Contribution Order may demonstrate a commitment to the idea of universal service, the imposition of a *federal* surcharge does not in itself establish jurisdiction by the *state* to impose a state universal service fee.

Plaintiff also contends that exempting Vonage from state universal service fund requirements would give Vonage an unfair competitive advantage over other telecommunication providers, including some other VoIP carriers. Plaintiff points to 47 U.S.C. § 254(b)(4), which states that "all providers of telecommunications services should make an equitable and nondiscriminatory contribution to the preservation and advancement of universal service." Plaintiff may well be correct on this point. However, just as the Magistrate Judge found that this Court is not the proper forum for litigating the technical factual issues surrounding whether

intrastate traffic can be separated from interstate traffic, the issue of unfair competition should also be initiated before the FCC. Further, the issue is irrelevant to the threshold preemption issue raised in Vonage's motion to dismiss.

Without belaboring other minor issues raised by Plaintiff, the Court finds that all of Plaintiff's arguments are either rendered meritless by the Eighth Circuit's recent decision or are irrelevant to the preemption issue. Accordingly, the Court overrules Plaintiff's remaining arguments.

## CONCLUSION

This Court has conducted a *de novo* review of the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 29) and a review of Plaintiff's Objections (Doc. 30) and finds that Plaintiff's Objections are overruled for the reasons set forth in this Memorandum Opinion and Order. This Court further finds that Vonage's Motion to Dismiss shall be granted on the basis of federal preemption.

**THEREFORE, IT IS ORDERED** that Plaintiff's Objections (Doc. 30) to the Magistrate Judge's Proposed Findings and Recommended Disposition are hereby OVERRULED; that the Proposed Findings and Recommended Disposition of the United States Magistrate Judge (Doc. 29) are hereby ADOPTED BY THE COURT and that Vonage's Motion to Dismiss is GRANTED and that the above-captioned case is hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE